IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 13 C 7637 ) |
| DENTAL USA, INC. et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Hartford Casualty Insurance Company's (Hartford) partial motion for summary judgment, and on Defendant Dental USA, Inc.'s (Dental) partial motion for summary judgment. For the reasons stated below, Hartford's motion is granted in part and denied in part without prejudice, and Dental's motion is granted in part and denied in part without prejudice.

## BACKGROUND

Hartford is an insurance company that since 2008 has issued separate liability insurance policies (Policies) to Dental, effective annually and subject to ongoing reviews. Dental is a supplier of dental instruments allegedly owning several U.S.

1

Trademark Registrations and Patents. Dental commenced two lawsuits asserting alleged patent, trademark, and copyright infringement of such intellectual property. In one action, Dental sued Jayson McClellan (McClellan) and other defendants (McClellan Action), and in the other action Dental sued Carl E. Misch (Misch) and other defendants (Misch Action). In both the McClellan Action and Misch Action (collectively referred to as "Underlying Actions"), counterclaims (Counterclaims) were brought against Dental, which allegedly asserted infringement by Dental of intellectual property rights. Dental requested that Hartford defend and indemnify Dental in the Underlying Actions pursuant to the coverage in the Policies. Hartford brought the instant action and includes in the amended complaint claims seeking a declaration that Hartford owes no duty to defend or indemnify Dental under the "bodily injury" or "property damage" coverage (Count I), claims seeking a declaration that Hartford owes no duty to defend or indemnify Dental under the "personal and advertising injury" coverage (Count II), claims seeking a declaration that Hartford owes no duty to defend or indemnify Dental under the "damages" coverage (Count III), claims seeking a declaration that Hartford owes no duty to defend or indemnify Dental based on the intellectual property exclusion (Count IV), claims seeking a declaration that Hartford owes no duty to defend or indemnify Dental based on the expected or intended injury exclusion (Count V), claims seeking a declaration that Hartford owes no duty to defend or indemnify Dental based on the knowledge of falsity exclusion (Count VI), claims seeking a declaration that Hartford owes no duty to defend or indemnify Dental based on the periods of coverage (Count

2

VII), claims seeking a declaration that Hartford owes no duty to defend or indemnify Dental based on the quality or performance of goods / failure to conform to statements exclusion (Count VIII), claims seeking a declaration that Hartford owes no duty to defend or indemnify Dental in the Misch Action based on the breach of contract exclusion (Count IX).

On January 15, 2014, Hartford voluntarily dismissed all claims brought against Jayson McClellan, Shabbir A. Gul, Randall Pardy, and Marketing Logistics, LLC. On February 11, 2014, Hartford dismissed all claims brought against Misch Instruments, LLC and Carl E. Misch. Dental is the sole remaining defendant in this action. Hartford now moves for summary judgment on the claims brought against Dental in Counts I, IV, VII, and IX. Dental moves for summary judgment on the claims brought against Dental in Counts II-IX.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

## DISCUSSION

The parties agree that Illinois law governs the coverage dispute in this case. (PSJ 3 n.3); (D SJ 1-2). In an insurance coverage declaratory judgment action brought in federal court in Illinois based on diversity, Illinois contract law applies. *Clarendon Nat. Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011)(stating that "[i]n Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies")(citing *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005)). In interpreting an insurance policy under Illinois law the court should "aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy." *Id.*

4

(stating that "[i]n doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract"). If the pertinent language in the insurance policy is "unambiguous, courts apply it as written." *Id.* Terms in an insurance policy that limit coverage "are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation." *Id.*

An insurer has a duty to defend the insured under Illinois law "if the underlying complaint alleges facts that fall within, or potentially within, the policy's coverage." *Menard, Inc. v. Country Preferred Ins. Co.*, 992 N.E.2d 643, 648-49 (Ill. App. Ct. 2013)(explaining that "[t]he duty to defend is much broader than the duty to indemnify, because the duty to defend is triggered if the complaint *potentially* falls within the policy's coverage; the duty to indemnify, on the other hand, applies only when the resulting loss or damages *actually* come within the policy's coverage")(emphasis in original). In order to ascertain whether a "loss is potentially covered under an insurance policy, a court must compare the allegations in the underlying complaint to the policy language" and "[b]oth the underlying complaint and the insurance policy should be liberally construed in favor of the insured." *Id.*

It is undisputed that the Policies contained the following provision:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit'

5

seeking damages for 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance does not apply.

(R PSF Par. 35).

I. Bodily Injury or Property Damage (Count I)

Hartford moves for summary judgment on the claim in Count I, in which Hartford seeks a declaration that Hartford owes no duty to defend or indemnify Dental under the "bodily injury" and "property damage" coverage. It is undisputed that the phrase "bodily injury" is defined in the Policies as a "physical . . . [i]njury; . . . [s]ickness; or . . . [d]isease." (R PSF Par. 35). It is also undisputed that the Policies define "property damage" as the following:

> Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or . . . Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of 'occurrence' that caused it.

(R PSF Par. 35). Dental fails, in response to Hartford's motion for summary judgment on Count I, to even attempt to rebut Hartford's motion, instead choosing to base its arguments relating to coverage solely on the existence of the language in the Policies referencing a "personal and advertising injury," and referencing "damages." (Ans. PSJ 2-6); (DSJ 3-7). It is undisputed that the Counterclaims involve claims such as breach of contract claims, claims relating to patent rights, unfair competition, copyright infringement claims, claims relating to trademark rights, and false designation of origin and false advertising claims. (R PSF Par. 10-30). Even when

6

liberally construing the claims in the Counterclaims, there are no facts involved in the Counterclaims that would relate to a physical injury, sickness or disease. Nor are there facts in the Counterclaims that relate to physical injury to or loss of the use of tangible property as defined in the Policies. Dental has failed to point to evidence that shows the Counterclaims seek damages for a "bodily injury" or "property damage" as defined by the Policies. Therefore, Hartford's motion for summary judgment on the claim brought against Dental in Count I is granted.

II. Intellectual Property Exclusion (Count IV)

Hartford argues that even if the Counterclaims are covered as involving "damages" or a "personal and advertising injury," such coverage would be excluded by the intellectual property exclusion. It is undisputed that the Policies issued from 2008 to 2011 contained the following exclusion: "This insurance does not apply to: . . . 'Personal and advertising injury'. . . [a]rising out of any violation of any intellectual property rights, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity. . . ." (R PSF Par. 35). It is undisputed that the policy issued for the period from 2013 to 2014 (2013-14 Policy) and the policy issued for the period from 2012 to 2013 (2012-13 Policy) contained the following endorsement (Endorsement) replacing the above-referenced exclusion with a new exclusion (IP Exclusion) for "[a]ny injury or damage alleged in any claim or 'suit' that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you

7

or by any other party involved in the claim or 'suit,' regardless of whether this insurance would otherwise apply." (R PSF Par. 36).

### A. Relevant Policy

Hartford contends that the relevant policy for the Counterclaims would be the 2013-14 Policy. The Policies provide that a "personal and advertising injury" consists of an "injury . . . arising out of" a list of potential offenses. (R SF Par. 35). Dental contends that the pertinent alternative that provides coverage is the following offense: "Copying, in your 'advertisement,' a person's or organization's 'advertising idea' or style of 'advertisement.'" (PSJ 5-6); (Ans. DSJ 3); (R PSF Par. 35).

The potential personal and advertising injury implicated in the Counterclaims are premised on alleged statements by Dental to the customers of McClellan and Misch sometime after April 30, 2013, when the 2013-14 Policy became effective. (PSF Par. 9, 15-16, 21, 26-27, 35). It is undisputed that Dental did not discover the alleged wrongful conduct that led to the filing of the Underlying Actions until late 2012, and that the alleged wrongful conduct by Dental that led to the filing of the Counterclaims occurred after such discovery by Dental. (R PSF Par. 9-21, 26-27). Dental acknowledges that the Counterclaims allege facts that would fall within the periods of the 2012-13 Policy and the 2013-14 Policy, but argues that there is evidence of statements allegedly made by Dental relating to the designation of origin that extended back as late as 2011 in a catalog. Specifically, Dental contends that the Counterclaims allege that Dental, in a catalog dated in 2011 (Catalog), falsely

8

asserted: "All manufacturing processes are performed in our Chicagoland area facility in the USA." (D SJ 14); (Misch CC Par. 235 and Ex. C); (Mc CC Par. 233). However, as Hartford correctly points out, whether or not Dental stated a false origin regarding its products would not implicate the type of advertising injury envisioned in the Policies. Such conduct would not involve the copying of an advertisement or of an advertisement idea or style. Dental argues that it could be implied from the allegation that Dental misrepresented that the products were made in the United States and that Dental is using "US Steel" as a source for products to unfairly enhance its reputation. (D Reply 1). Although the duty to defend is triggered when there is a potential for coverage, such coverage, however, cannot be triggered upon pure speculation and strained inferences. Thus, the Catalog did not trigger coverage under the Policies.

The court also notes that Dental references in its motion for summary judgment the alternative, in the Policies, which indicates that defamation would constitute a "personal and advertising injury." (PSJ 3). However, the false origin allegation relating to 2011 does not in any way relate to the disparagement of another's reputation and would not fall within the scope of that defamation alternative either. Finally, although Dental references allegations in the Counterclaims relating to alleged non-disclosure by Dental to the Patent Office, that conduct does not in any way fall within the definition of a "personal and advertising injury." Thus, the only conduct that could have conceivably triggered coverage

9

under the Policies occurred at the earliest after April 30, 2012, when the 2012-13 Policy became effective.

### B. IP Exclusion

The Endorsement, which is part of the 2012-13 Policy and the 2013-14 Policy, clearly excludes "[a]ny injury or damage alleged in any claim or 'suit' that also alleges an infringement or violation of any intellectual property right. . . ." The undisputed facts show that the Counterclaims fall squarely within that definition. For example, the Counterclaims include allegations of infringement of patent and trademark rights. Even when viewing the terms of the 2012-13 Policy and 2013-14 Policy in a light most favorable to Dental, the clear and unequivocal terms of the IP Exclusion are such that the loss at issue in the Counterclaims is not even potentially covered under such policies. Thus, the IP Exclusion bars coverage for a "damages" claim or a "personal and advertising injury" claim. In addition, the court notes that even if the IP Exclusion was not found to be applicable, the prior exclusion relating to intellectual property rights would act as a bar to coverage for Dental since the Counterclaims are all premised on intellectual property rights and are all arising out of a violation of intellectual property rights.

### C. Public Policy

Dental, apparently recognizing that the IP Exclusion clearly covers the Counterclaims, argues in the alternative that the IP Exclusion violates public policy.

However, the IP Exclusion is clearly written and is unambiguous. Dental has not shown itself to be an unsophisticated party. Dental signed the Endorsement with the 2012-13 Policy and signed it for a second time with the 2013-14 Policy and thus should have been well aware of the scope of the Endorsement. Dental offered consideration for the bargained for exchange when entering into the 2012-13 Policy and the 2013-14 Policy. The consideration offered by Dental was given in exchange for a coverage of a specified scope of risk. Public policy is promoted by requiring a party to honor the terms of an agreement which are plainly and unequivocally written. Public policy would not be promoted by allowing Dental to unilaterally expand the scope of the Policies after the parties entered into the agreement. A party entering into an agreement has a right to expect that the clear and unambiguous terms agreed upon will not, in retrospect, be altered to benefit the other party to the agreement. Dental has not shown that the IP Exclusion is contrary to Illinois public policy. Dental also argues that it paid no consideration because the Endorsement resulted in less coverage and yet it paid more than it had previously when entering into the 2012-13 Policy and 2013-14 Policy. However, the mere fact that the costs were increased with the Policy did not mean that Dental offered no consideration for the contract. Dental had a choice and it chose to enter into the Policies. Dental also had a choice to refuse to sign the Endorsement and if that was a deal breaker to seek insurance coverage elsewhere. Dental's claims that it was somehow unfairly treated by Hartford rings hollow.

Dental also argues that to enforce the terms IP Exclusion "renders the entire insurance policy illusory. . . ." (Ans. PSJ 6). However, no such showing has been made by Dental. The Policies covered injuries relating to a "personal and advertising injury," which potentially covers a broad range of claims. Such claims would have remained covered under the Policies, including the 2012-13 Policy and the 2013-14 Policy absent of entanglement with intellectual property rights. It is Dental's view of the terms of the Policies that would in essence give no effect to the Endorsement that was twice signed by Dental. Dental argues that the broad reading of the IP Exclusion leads to unreasonable results. Dental argues, for example, that even if there were claims filed by the plaintiffs in the Underlying Actions against each other, the broad reading of the IP Exclusion would act as a bar to coverage. However, in such an instance, Dental would face no legal claims. There would be no need for Dental to pay legal costs or be indemnified and so there would be no need for Dental to seek coverage. Dental chose to pursue litigation in the Underlying Actions to enforce its intellectual property rights. Nothing in the Policies barred Dental from doing so. However, Dental should have been aware based on the clear and unequivocal language in the 2012-13 Policy and the 2013-14 Policy and the Endorsement that was twice signed by Dental that Dental would likely need to pay to defend counterclaims in such litigation. Based on the above, Hartford's motion for summary judgment in Count IV is granted and Dental's motion for summary judgment on the claim in Count IV is denied.

III. Remaining Claims

In light of the above, Dental has failed to point to evidence that shows that coverage under the Policies is triggered due to the "bodily injury" and "property damage" language in the Policies or due to the use of the term "damages" in the Policies. To the extent that Dental could show that the Counterclaims involve a "personal and advertising injury," the undisputed facts show that such claims are excluded by the IP Exclusion. Based on such findings as a matter of law in regard to the claim in Counts I and IV, Hartford is not obligated to indemnify or defend Dental in the Underlying Action. The same relief that is sought by Hartford in Counts I and IV is also sought by Hartford in Counts II, III, V, VI, VII, VIII, and IX. However, Hartford moved for summary judgment on Counts I, IV, VII and IX. Having resolved the relief sought by Hartford in Counts I and IV, there no longer remains a controversy to be decided by this court as to any other Counts, including Counts VII and IX on which Hartford moved for summary judgment. Judicial resources would not best be served to rule on alternative claims seeking to resolve the same issue. Since his court has concluded that Hartford owes no duty to defend or indemnify Dental, Dental's motion for summary judgment on Count IV is denied, and Dental's motion for summary judgment on II, III, V, VI, VII, VIII, and IX is denied without prejudice as all relate to the duty to defend and indemnify. Therefore all remaining claims, which seek the same ultimate relief that has been accorded based upon the claims of Hartford in Counts I and IV, are dismissed without prejudice.

## CONCLUSION

Based on the above, Hartford's motion for summary judgment is granted on Counts I and IV and denied without prejudice on Counts VII and IX. Dental's motion for summary judgment on Count IV is denied, and Dental's motion for summary judgment on Counts II, III, and V-IX is denied without prejudice. All remaining claims are dismissed without prejudice.


_____
Samuel Der-Yeghiayan
United States District Court Judge


Dated: June 24, 2014